**E-FILED on** 9/13/02

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ELAINE L. CHAO, Secretary of Labor, United States Department of Labor,<br><br>Plaintiff,<br><br>v.<br><br>LOCAL LODGE 2228, INTERNATIONAL ASSOCIATION OF MACHINES AND AEROSPACE WORKERS, AFL-CIO,<br><br>Defendant. | No. C-01-20402 RMW<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT<br><br>**[Re Docket Nos. 25, 35]** |

Plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment were heard on September 6, 2002. For the reasons set forth below, the court grants plaintiff's motion and denies defendant's cross-motion.

## I. BACKGROUND

This is a labor case involving an alleged union election violation. The issue to be decided is whether defendant's election violation in December 2000 requires holding a new election supervised by the Secretary of Labor.

Defendant Local Lodge 2228 ("Local 2228") is a local labor organization representing approximately 390 Lockheed Martin employees in Sunnyvale, CA. Local 2228 is a subordinate to the International Association of Machinists and Aerospace Workers, AFL-CIO ("the International").

On November 4, 2000, Local 2228 held nominations for the regularly scheduled election of its officers. Two candidates were nominated for the office of president: David Stealey and Lyman Penning. On November 30, 2000, two days before the election, Mr. Penning filed a written protest with the Local Election Committee challenging Mr. Stealey's eligibility to run for president. Specifically, Mr. Penning alleged that Mr. Stealey did not meet the IAM International Constitution's requirement that "all candidates for elective office must be . . . free from delinquency of any nature to a Local Lodge, District Lodge, or the Grand Lodge." (Kumli Decl. Ex. B at P-107 (IAM Const. at 84).) Mr. Penning alleged that at the time of Mr. Stealey's nomination, Mr. Stealey was delinquent in returning union-owned computer equipment to District Lodge 725.

No action was taken regarding Mr. Penning's protest before December 2, 2000, when Mr. Stealey was elected president of Local 2228. Two days later, Local 2228 denied Mr. Penning's protest. That same day, Mr. Penning appealed the denial of his protest to the International. The International, based on the information provided to it by Local 2228 regarding Mr. Stealey's eligibility, denied the appeal four days later on December 8, 2000. At that point, Mr. Penning had exhausted his internal union remedies and was free to file a complaint with the Secretary of Labor. See 29 U.S.C. § 482(a)(1).[1]

On January 10, 2001, Mr. Penning filed a timely complaint with the Secretary of Labor challenging the results of the December 2, 2000 election. On January 25, 2001, an investigator from the Department of Labor informed the International of Mr. Penning's complaint, indicating that it appeared that Mr. Stealey was ineligible to run for president due to his indebtedness to District Lodge 725 and that the Secretary would be conducting an investigation. In response, the International conducted its own investigation and confirmed that the allegations against Mr. Stealey were true, contrary to the information Local 2228

---

[1] 29 U.S.C. 482(a)(1) states:

A member of a labor organization—

(1) who has exhausted the remedies available under the constitution and bylaws of such organization and or any parent body, . . .

\*\*\*

may file a complaint with the Secretary within one calendar month thereafter alleging the violation of any provision of section 481 of this title (including violation of the constitution and bylaws of the labor organization pertaining to the election and removal of officers).

previously had provided the International. On January 29, 2000, the International informed Local 2228 that Mr. Stealey had been ineligible to run for president and ordered Local 2228 to install Mr. Penning, the only other candidate in the election, as its president. On February 5, 2001, at the International's direction, Local 2228 removed Mr. Stealey and installed Mr. Penning.

In the meantime, the Secretary was conducting her investigation of the December 2, 2000 election. The Secretary ultimately determined that the election violated section 401(e) of the Labor-Management Reporting and Disclosure Act ("LMRDA") of 1959, 29 U.S.C. § 481(e), which requires a labor organization to conduct the election of its officers in accordance with its constitution and bylaws. Because Mr. Stealey failed to return the union-owned computer equipment to District Lodge 725, the Secretary found him to be delinquent under the IAM International Constitution and, thus, ineligible to run for Local 2228's president.

In protest of replacing Mr. Stealey with Mr. Penning, the members of Local 2228 voted to spend $10,000 to investigate and defend Mr. Stealey's eligibility. The members did not follow the proper procedures, however, for appropriating the $10,000, namely, they did not secure then-newly-installed-president Mr. Penning's signature, the very person they were seeking to uproot. They used a subterfuge to avoid getting Mr. Penning's signature, in violation of the IAM International Constitution. As a result, the International determined it would be appropriate to place Local 2228 in trusteeship.

The Local 2228 members challenged the trusteeship by filing suit in this court, case no. 01-20233 JF, entitled, <u>Anderson v. Grand Lodge of the International Association of Machinists</u>. Shortly thereafter, however, the International determined that the purposes behind imposing the trusteeship had been satisfied and decided to end the trusteeship and restore Local 2228's autonomy. In the same time period, Mr. Penning was found guilty of misconduct in violation of the International's Constitution and was barred from serving in office for two years. As a result, the office of president became vacant, necessitating a new election for that office. The International's decision to hold a new election was made before the Secretary had concluded her investigation of the alleged December 2, 2000 election violation.

On May 17, 2001, the Secretary of Labor, having completed her investigation and finding probable cause that an election violation occurred, filed a complaint in this court under LMRDA § 402(b), 29 U.S.C.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING
DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT—C-01-20402 RMW
GYI                                      3

1   § 482(b),[2] seeking (1) a judgment declaring the December 2, 2000 election for Local 2228's president null

2   and void; and (2) an order directing Local 2228 to conduct a new election under the Secretary's

3   supervision.  (See Compl. ¶ 1.)

4         On May 29, 2001, plaintiff's counsel, Susan Gillett Kumli, sent defendant's counsel a letter

5   indicating that "[a]n unsupervised election conducted by the union is not a proper remedy in that an

6   actionable complaint has been filed and the union has failed to resolve this matter with the Secretary."  The

7   letter further indicated that "[t]he Secretary will not accept this election and will not recognize the elected

8   officer."  (Kumli Decl. Ex. H.)  Defense counsel responded to Ms. Kumli's letter on June 7, 2001, stating

9   that "the new elections are in part a result of the imposition of the trusteeship and the Secretary's authority

10  lapses with the trusteeship."  (Kumli Decl. Ex. L.)  Defense counsel further opined that he saw no need for

11  a supervised election "in light of the fact that the Grand Lodge [i.e., the International] has already started the

12  process of conducting this election and can adequately supervise the election to ensure fairness to all."  (Id.)

13        On July 7, 2001, Local 2228 held an election for the office of president.  Michael Anderson, who

14  was the named plaintiff in the action brought by the Local members to dissolve the trusteeship, was elected,

15  and has since been installed, as Local 2228's president.

16        The Secretary filed the present summary judgment motion on June 28, 2002 seeking the same

17  remedies set forth in the complaint, namely (1) a judgment declaring the December 2, 2000 election void

18  and (2) an order directing Local 2228 to conduct a new election under the Secretary's supervision.  (See

19  Mot. at 5:25-6:2.)

20        In opposition, Local Lodge 2228 argues that this court should exercise its equitable discretion not

21  to order a rerun of the election on the grounds that it remedied the election violation by promptly installing

---

[2]    29 U.S.C. § 482(b) states:

> The Secretary shall investigate such complaint and, if he finds probable cause to believe that a violation of this subchapter has occurred and has not been remedied, he shall, within sixty days after the filing of such complaint, bring a civil action against the labor organization as an entity . . . to set aside the invalid election, if any, and to direct the conduct of an election or hearing and vote upon the removal of officers under the supervision of the Secretary and in accordance with the provisions of this subchapter and such rules and regulations as the Secretary may prescribe.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING
DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT—C-01-20402 RMW
GYI                                                                 4

Mr. Penning as president when it confirmed that Mr. Stealey was ineligible and, additionally, when it reran the election in July 2001 following the end of the trusteeship.

## II.  ANALYSIS

29 U.S.C. § 482(c)(2) provides:

> If, upon a preponderance of the evidence after a trial upon the merits, the court finds—
>
> (2)  that the violation of section 481 of this title may have affected the outcome of an election,
>
> the court shall declare the election, if any, to be void and direct the conduct of a new election under supervision of the Secretary . . . .

Here, neither party disputes that Mr. Stealey was in fact ineligible to run for president in the December 2, 2000 election.  (See Opp. at 5:14-15.)  His indebtedness for failure to return the union-owned computer equipment rendered him delinquent and, thus, ineligible to run for Local 2228's president under the IAM International Constitution.  As a result, his nomination for the office of president in November 2000 violated § 481(e), which requires a labor organization to conduct the election of its officers in accordance with its constitution and bylaws.

Similarly, it cannot reasonably be disputed that the § 481 violation "may have affected the outcome" of the December 2, 2000 election.  Mr. Stealey and Mr. Penning were the only two candidates for that office.  Had Mr. Stealey properly been precluded from running, it is likely that Mr. Penning, the only remaining candidate, would have secured the office.  Accordingly, a preponderance of the evidence shows that § 482(c)(2)'s prerequisite—that the violation of section 481 may have affected the outcome of the election—has been satisfied in this case.

The parties dispute, however, what action this court may, or must, take based on the satisfaction of this prerequisite.  The Secretary argues that the statute is written in mandatory language and requires that "the court shall declare the election, if any, to be void and direct the conduct of a new election under supervision of the Secretary." 29 U.S.C. § 482(c)(2) (emphasis added).  Local 2228, on the other hand, argues that the court has the equitable discretion to deny the relief the Secretary seeks and that the court should exercise that discretion in this case, where Local 2228 already remedied the election violation.  The court finds that the applicable case law supports the Secretary's position.

In <u>Wirtz v. Local 153, Glass Bottle Blowers Ass'n</u>, 389 U.S. 463 (1968), the Secretary had filed a complaint in federal court under § 482(b) for an alleged election violation. The district court dismissed the action for failure to show that the alleged election violation "may have affected the outcome" of the election, and the Secretary filed an appeal in the Third Circuit. <u>Id.</u> at 466. While the case was on appeal, the Local had conducted its next regular biennial election. As a result, the Third Circuit ordered the case dismissed as moot. The Supreme Court reversed, holding that "when the Secretary of Labor proves the existence of a § 401 violation that may have affected the outcome of a challenged election, the fact that the union has already conducted another unsupervised election does not deprive the Secretary of his right to a court order declaring the challenged election void and directing that a new election be conducted under his supervision." <u>Id.</u> at 475-76. In reaching that holding, the Court interpreted the LMRDA as follows:

> [N]o exceptions are admitted by the unambiguous wording that when "the violation of § 401 may have affected the outcome of an election, the court <u>shall</u> declare the election, if any, to be void and direct the conduct of a new election under supervision of the Secretary . . . ."
>
> Nonetheless, this does not end the inquiry. We have cautioned against a literal reading of congressional labor legislation; such legislation is often the product of conflict and compromise between strongly held and opposed views, and its proper construction frequently requires consideration of its wording against the background of its legislative history and in the light of the general objectives Congress sought to achieve. The LMRDA is no exception.

<u>Id.</u> at 468 (emphasis and omission in original) (citation and footnote omitted).

Looking to the legislative history of the LMRDA, the Court recognized the legislative commitment to "postpone governmental intervention until the union is afforded the opportunity to redress the violation." <u>Id.</u> at 649. The Court explained that this commitment is met by requiring a complaining union member to exhaust internal union remedies before invoking the aid of the Secretary, by requiring the Secretary to have probable cause of a violation before bringing suit, by allowing the Secretary to seek settlement rather than bringing suit, and by presuming an election to be valid during the pendency of the Secretary's action. <u>See</u> <u>id.</u> at 472. "Congress has explicitly told us that these provisions were designed to preserve a 'maximum amount of independence and self-government by giving every international union the opportunity to correct improper local elections." <u>Id.</u> at 472-73.

The Supreme Court then recognized, however, that once the Secretary properly intervenes, the local organization's ability to remedy its own election violation ends:

> But it is incorrect to read these provisions circumscribing the time and basis for the Secretary's intervention as somehow conditioning his right to relief once that intervention has been properly invoked.  Such a construction would ignore the fact that Congress, although committed to minimal intervention, was obviously equally committed to making that intervention, once warranted, effective in carrying out the basic aim of Title IV.  Congress deliberately gave exclusive enforcement authority to the Secretary, having "decided to utilize the special knowledge and discretion of the Secretary of Labor in order best to serve the public interest." . . . Congress unequivocally declared that once the Secretary establishes in court that a violation of § 401 may have affected the outcome of the challenged election, "The court shall declare the election . . . to be void and direct the conduct of a new election under supervision of the Secretary . . . ."
>
> We cannot agree that this statutory scheme is satisfied by the happenstance intervention of an unsupervised election.  The notion that the unlawfulness infecting the challenged election should be considered as washed away by the following election disregards Congress' evident conclusion that only a supervised election could offer assurance that the officers who achieved office as beneficiaries of violations of the Act would not by some means perpetuate their unlawful control in the succeeding election. . . .  Congress chose the alternative of a supervised election as the remedy for a § 401 violation in the belief that the protective presence of a neutral Secretary of Labor would best prevent the unfairness in the first election from infecting, directly or indirectly, the remedial election.  The choice also reflects a conclusion that union members made aware of unlawful practices could not adequately protect their own interests through an unsupervised election.  It is clear, therefore, that the intervention of an election in which the outcome might be as much a product of unlawful circumstances as the challenged election cannot bring the Secretary's action to a halt.  Aborting the exclusive statutory remedy would immunize a proved violation from further attack and leave unvindicated the interests protected by § 401.  Title IV was not intended to be so readily frustrated.

Id. at 473-75 (second and third omissions in original).

Local 2228 argues that there is no risk of an incumbent infecting the July 2001 "remedial" election, because Mr. Stealey was removed from office before that election was held.  (See Opp. at 12:2-3.) Although Mr. Stealey was removed from office, the court cannot be sure, based on the evidence presented to it, that Mr. Stealey did not somehow affect the subsequent election during his unlawful tenure in office. The Supreme Court recognized the risk that an incumbent might "directly or indirectly" infect the remedial election, and this court agrees that it is prudent to use the Secretary's "special knowledge" and discretion in these circumstances.  Moreover, the Supreme Court explained that the LMRDA is not limited simply to stifling an incumbent's possible influence on the new election and was not designed merely to protect the right of a union member to run for a particular office in a particular election:

> [T]he Act is not so limited, for Congress emphatically asserted a vital public interest in assuring free and democratic union elections that transcends the narrower interest of the complaining union member.

Id. at 475.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING
DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT—C-01-20402 RMW
GYI                                                                 7

The Ninth Circuit, in <u>Hodgson v. Local Union 400, Bakery & Confectionery Workers' International Union of America, AFL-CIO</u>, 491 F.2d 1348 (9th Cir. 1974), expanded the scope of the <u>Wirtz</u> holding to encompass facts similar to the present case:

> The Court [in <u>Wirtz</u>] held that the union's unilateral act of holding a new unsupervised election after an action was filed did not deprive the Secretary of his right to a court-ordered election under his supervision. We hold that the same rule applies if the union unilaterally conducts a second election before the Secretary files suit but after a union member has filed a proper complaint under section 402(a) of the Act.

491 F.2d at 1349.

Here, Mr. Penning filed a proper complaint with the Secretary on January 10, 2001, before Local 2228 removed Mr. Stealey and before it conducted the July 2001 election. The Ninth Circuit repeatedly emphasized that at this point, the union's right to correct its own election violation is terminated:

> [W]e agree with the Secretary that the union's opportunity to remedy its illegal actions unilaterally is cut off by the proper filing of a complaint with the Secretary . . . .
>
> ***
>
> If the union's power to unilaterally remedy election violations also extended into the period after union grievance procedures had been unsuccessfully exhausted and a complaint filed with the Secretary, the accomplishment of Congress' objectives would be impeded, not advanced.
>
> Once a protesting union member has exhausted his union remedies and filed a timely complaint with the Secretary, it is too late to avoid government intervention.
>
> ***
>
> The Secretary's intervention is invoked by the filing of a timely complaint after internal remedies have been exhausted. The congressional commitment to voluntary redress has then been met. The Secretary's right to the statutory remedy of a supervised election cannot be defeated by any subsequent independent action of the union, whether it occurs before the Secretary files an action or after.

<u>Id.</u> at 1350 n.3, 1351, 1353.

In support of its holding, the Ninth Circuit explained that strict adherence to the Secretary's right to a supervised election is necessary to encourage unions to respond promptly to the legitimate complaints of its members through union grievance procedures:

> [U]nless deferring action until the Secretary finds probable cause and is about to file suit would increase the risk of a court-ordered supervision election, there would be little incentive for the union to provide an effective remedy in any but the most egregious cases, or to provide such a remedy at an early stage. Conversely, if affording an effective remedy in the course of the union's internal grievance proceeding is the only way in which the union can be sure to avoid a court-ordered election under the Secretary's supervision, the union

has a substantial incentive to respond quickly and effectively to the legitimate protests of its members.

Id. at 1352.

Here, Mr. Penning filed a protest with the Local Election Committee on November 30, 2000, which was apparently considered and denied after the December 2, 2000 election at issue. Then, his subsequent appeal to the International was denied. It was only after Mr. Penning filed a complaint with the Secretary and after the Secretary subsequently notified the International of the possible election violation that Local 2228 conducted its own investigation and readily determined that Mr. Stealey was in fact ineligible to run in the December 2000 election. The policy expressed in Hodgson of encouraging a quick and effective response to member protests applies in this case.

Local 2228 relies heavily on the Eighth Circuit's decision in McLaughlin v. Lodge 647, International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers, and Helpers, AFL-CIO, 876 F.2d 648 (8th Cir. 1989), for the proposition that district courts enjoy equitable discretion as to whether to adhere to § 482(c)(2)'s mandatory language that the court "shall" declare elections in violation of § 481 void and direct supervised new elections. The court acknowledges that the McLaughlin court did interpret the Supreme Court's decision in Wirtz much more broadly than the Ninth Circuit did in Hodgson. However, this court obviously is bound by Ninth Circuit precedent, not Eighth Circuit precedent, and the McLaughlin court expressly distinguished the Ninth Circuit's decision in Hodgson and this court's decision in Wirtz v. Local Union No. 1622, 285 F. Supp. 455, 465 (N.D. Cal. 1968), as among "the few courts" that have followed the view that § 482(c)(2) "is set forth in mandatory terms, obligating the court to order a new election." McLaughlin, 876 F.2d at 651. Additionally, Local 2228's reliance on Reich v. District Lodge 720, International Ass'n of Machinists, AFL-CIO, 11 F.3d 1496 (9th Cir. 1993), for the proposition that "equitable principles do govern the extent of the relief to be granted," is misplaced. In that case, the Ninth Circuit expressly declined to address that issue. See 11 F.3d at 1504.

### III. ORDER

For the foregoing reasons, the court grants plaintiff's motion for summary judgment and denies defendant's cross-motion for summary judgment. The December 2, 2000 election is declared void, and Local 2228 is ordered to conduct a rerun election under the Secretary's supervision for the office of

1 | president (and additional offices, if it desires) by no later than November 16, 2002, unless a different
2 | election date is agreed upon by the Secretary and defendant.

5 | DATED:     9/13/02                               /s/ Ronald M. Whyte
                                                    RONALD M. WHYTE
                                                    United States District Judge

**Notice of this document has been electronically sent to:**

| | |
|---|---|
| Jocelyn Burton | Jocelyn.Burton@usdoj.gov |
| David A. Rosenfeld | courtnotices@vanbourg.com |
| Steven J. Saltiel | Steven.Saltiel@usdoj.gov |

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**   9/13/02           /s/ GYI
                              **Chambers of Judge Whyte**